| | |
|---|---|
| CHINYERE OGBONNA-MCGRUDER, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> AUSTIN PEAY STATE UNIVERSITY ) <br> ) <br> **Defendant.** ) <br> ) | CASE NO. _____ <br><br> JURY DEMAND |

# COMPLAINT

COMES NOW the Plaintiff, **CHINYERE OGBONNA-MCGRUDER** (hereinafter "McGruder" or "Plaintiff") by and through counsel, and states as follows against the Defendant, **AUSTIN PEAY STATE UNIVERSITY** (hereinafter "Defendant"), seeking relief for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. to correct unlawful employment practices on the basis of race and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

## PARTIES

1. Plaintiff is a resident of the United States who resides in Goodlettsville, Tennessee. She is and was at all times relevant to this Complaint a citizen of the State of Tennessee and a resident of Robertson County.

2. Defendant is an educational institution located in Clarksville, Montgomery County, Tennessee that can be served through their Registered Agent: Herbert Slatery III, Attorney General of Tennessee and Reporter, Post Office Box 20207, Nashville, Tennessee 37202. Pursuant to the

Tennessee Rules of Civil Procedure Rule 4.04 (6), service upon the State of Tennessee or any agency thereof, shall be made upon the attorney general.

3. Plaintiff performed and continues to perform her duties at Austin Peay State University in Clarksville, Tennessee.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et. Seq.). This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 451, 1331, 1343, and 1367.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district.

6. Plaintiff filed a formal inquiry with the EEOC in September 2019 or 2019 generally that was assigned charge number 494-2019-02950 alleging discriminatory conduct. This complaint was apparently closed to allow parties to negotiate but reopened upon failure to reach an agreement.

7. On July 23, 2020, Plaintiff received the letter attached hereto as **Exhibit A** from the EEOC. The EEOC charge form 5 was sent enclosed with the letter and Plaintiff was to return within 30 days. The letter states that "Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge." In similar circumstances with this Court such as Morris v. Austin Peay State University, No. 3:19-cv-00509, this acknowledgment from the EEOC has been deemed sufficient to establish the filing of a charge because the employer has received notice, and any prejudice would be greater to the employee than the employer were the litigation allowed to go

2

Case 3:21-cv-00506   Document 1   Filed 07/01/21   Page 2 of 11 PageID #: 2

forward. This Court cited Farley v. Goodwill Indus. of Lower S.C., Inc., No. 4:15-CV-2450-RBH-KDW, 2016 WL 408949, at *9-13 (D.S.C. Jan. 12, 2016) ; Gad v. Kansas State Univ., No. CV 12-2375-EFM, 2016 WL 74399, at *7-9 (D. Kan. Jan. 6, 2016). "This court agrees, and will not dismiss the Amended Complaint on procedural grounds." Plaintiff would state that the effective date of her charge should be July 23, 2020.

8. On or about September 29th, 2020, Plaintiff returned the filed and signed charge of discrimination that was assigned the same charge number (No. 494-2019-02950) attached hereto as **Exhibit B**. Plaintiff through a new attorney and present counsel filed a second charge of discrimination on June 17, 2021 assigned as (No. 494-2021-01993) against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation attached hereto as **Exhibit C**. Plaintiff suffered additional discriminatory conduct and retaliation subsequent to issuance of the right to sue letter issued by the EEOC on April 7, 2021 requiring an additional charge of discrimination be filed. The first charge of discrimination could not be amended after issuance of this right to sue letter. The first charge only has boxes for sex and race checked but the substance of the factual allegations clearly demonstrate allegations of retaliation.

9. On or about April 7, 2021, Plaintiff received a notice of suit rights from the EEOC, advising her that she had 90 days to file against Defendant under Title VII as to charge of discrimination (No. 494-2019-02950). Attached hereto as **Exhibit D**.

10. On or about June 22, 2021, Plaintiff received a second notice of suit rights from the EEOC sent by EEOC upon its own initiative and without Plaintiff's request, advising her that she had 90 days to file against Defendant under Title VII as to charge of discrimination (No. 494-2021-01993). Attached hereto as **Exhibit E**.

11. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h). Furthermore, Defendant has continuously operated their business in Tennessee and this jurisdiction with at least fifteen employees.

12. The unlawful discrimination and/or retaliation alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

13. Plaintiff asserts she was discriminated against on the basis of her race. As such, Plaintiff falls within the protected class as a "person" and/or employee as defined in 42 U.S.C. § 2000e(a) who applied for and accepted employment with Defendant.

14. Defendant is an "employer" as that term is defined by 42 U.S.C. § 2000e(b) 42 and/or U.S.C. §12111(5)(A).

## STATEMENT OF FACTS

15. The discriminatory conduct alleged herein occurred in connection with Plaintiff's employment with Defendant as a college professor.

16. Since at least August 26, 2019, Defendant has engaged in unlawful employment practices at its Clarksville, Tennessee campus in violation of § 703(a) Title VII, 42 U.S.C. § 2000e-2(a) and/or Section 704(a) Title VII, 42 U.S.C § 2000e-3(a).

17. Defendant's discriminatory practices include but are not limited to: (1) creating or permitting a hostile work environment heavily charged with discrimination; (2) maintaining wages, job assignments and other conditions of employment that unlawfully operate to deny equal opportunity to Plaintiff because of her race; (3) creating a hostile, racially charged work

environment such that no reasonable person would be expected to endure; and (4) retaliating against Plaintiff for opposing discriminatory conduct.

18. Plaintiff was hired to perform as a college professor to teach classes in criminal justice and public management in 2003.

19. Plaintiff has a doctorate (Ph.D.) in public administration and public policy which she obtained at Tennessee State University in 2000.

20. In Spring 2017, faculty within the department were told by then Dean Denton that the public management/criminal justice department would be split into two departments with the fast-growing criminal Justice side becoming an autonomous department and public management merging with political science to become another autonomous department. Faculty if so inclined could ask for joint appointment based on chair approval. Faculty within the original public management/criminal justice department were told that they would self-select the department they wanted to join. There would be no review of their qualifications for the self-selection. Dean Denton rejected Plaintiff's chair approval for joint appointment and then denied her the opportunity to self-select her department. Plaintiff as an African American was denied the opportunity to self-select her department out of the two newly created departments (Department of Criminal Justice and the combined Department of Political Science and Public Management). Dean Denton decided to do the selection for Plaintiff. Plaintiff filed a formal complaint of racial discrimination in 2017 with the Office of Equal opportunity and Affirmative Action and the university did not respond till summer 2019. Dean Brown and other department heads and/or professors had knowledge of the filing of this complaint. University policy states that the investigation has to be completed within 60 days. The investigation found that the actions of Dean Denton were wrong, but the university failed to remedy the discrimination. Plaintiff also subsequently filed an EEOC

5

Case 3:21-cv-00506   Document 1   Filed 07/01/21   Page 5 of 11 PageID #: 5

complaint or inquiry in September 2019 or 2019 generally that was assigned charge number 494-2019-02950 alleging discriminatory conduct referenced in this paragraph. This charge was apparently closed to allow parties to negotiate but reopened upon failure to reach an agreement. From summer of 2019 till present, Defendant specifically through the actions of the department chair and Dean Brown began to engage in retaliatory treatment towards Plaintiff.

21. Plaintiff had previously filed a complaint against Dean Denton for discrimination with the University Office of Equal Opportunity and Affirmative Action that receives such complaints as referenced above. This filing of a complaint with the University Office of Equal Opportunity and Affirmative Action and the filing of an EEOC charge alleging race discrimination constitutes a protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

22. In the fall of 2019 through December 2019, Plaintiff was instructed to be removed from her office to a basement office as a form of retaliation for reporting and opposing previous racially charged discriminatory conduct. This was the second attempt in 2019 to transfer her to a basement office as retaliation.

23. In October 2019 and through early 2020, Plaintiff was excluded from participating in a group of other professors from the College of Behavioral and Health Sciences that was to draft a grant proposal submission for a new juvenile detention center in Montgomery County Tennessee. Dean Tucker Brown committed to Plaintiff in writing that she would be part of a group of professors demonstrating interest in participating. Dean Tucker Brown excluded Plaintiff from the group. County Commissioner Rashidah Leverett stated to Defendant that she wanted Plaintiff to be in this group as an African American due to the fact that many of the juveniles incarcerated are African American and to have diverse perspective.

24. In March, 2020, Plaintiff did not receive an annual evaluation per university policy for her performance in the 2019-2020 academic year under the false pretext of Plaintiff not submitting all the necessary documents. This was in retaliation for Plaintiff filing her charge of discrimination with the EEOC in 2019 and/or with Office of Equal opportunity and Affirmative Action. There was no other professor in the political science and public management department that did not receive an evaluation.

25. In the spring of 2020, the professors in the political science and public management department voted unanimously for Plaintiff to continue with the creation of the masters program. Plaintiff had previously submitted the initial phase one request on "curriculog" and it was approved. Dean Brown and department chair Lyle Gonga refused to confer with Plaintiff about the matter and this retaliatory conduct continues through present date.

26. In May 2020 Dean Brown refused to accept Plaintiff's lack of faculty appraisal appeal till she reached out to Human resources after the deadline. Human resources stated that this was in violation of policy and that the dean in fact was to respond within the deadline.

27. In May 2020 Dean Brown then scheduled a zoom call ostentatiously to address the appeal issue and ended up denigrating Plaintiff's teaching and research done with minority students. Dean Brown indicated that Plaintiff's teaching pedagogy was questionable despite the fact that he never attended any of her classes and she had a 5.5/6.0 student rating. Dean Brown said that student evaluation in his opinion was not a good indication for teaching excellence despite the fact that the college and retention committee use it as such including other universities.

28. In Spring 2020, Plaintiff was scheduled to teach a particular class in the fall 2020 but a white adjunct professor replaced her. Plaintiff consistently asked Dr. Lyle Gonga (hereinafter Gonga) as chair of the political science and public management department what replacement class

she would be teaching. It was not until approximately June/July 2020 that Dean Brown finally communicated to Dr. Lyle Gonga that Plaintiff would be teaching a class in criminal justice. The adverse effect was that Plaintiff could not develop lesson planning and other preparation for this fall semester class. Ordinarily, professors learn about their fall semester schedule in the previous spring semester allowing such time to prepare.

29. In February 2021, Plaintiff received an evaluation for the 2020-2021 academic year by Dr. Lyle Gonga. The evaluation score at first was 4.45 out of 6.0. Gonga subsequently lowered the evaluation score to 4.25 out of 6.0. Plaintiff informed Gonga that she had a record and proof proof of the score being 4.45 and only then did Gonga restore the original evaluation score of 4.45.

30. In early spring 2021, Plaintiff provided the classes to Gonga she chose to teach for summer and fall semesters of 2021. These classes included political science courses. Gonga changed the courses to public management classes. Plaintiff informed Gonga that she was concerned there would not be enough students signing up for the classes to "make" the schedule. Ordinarily, professors choose their classes they desire to teach. Gonga responded incredulously that in effect that Plaintiff was not qualified to teach political science classes due to not having a political science or law degree. Plaintiff has taught political science and public management classes for 18 years at Austin Peay University.

31. Plaintiff has been denied summer semester pay for two summer semesters by removing her from ability to teach summer semester classes she ordinarily taught.

32. Plaintiff has been subjected to harassment through inappropriate verbal scolding by Dean Brown that was offensive and witnessed by a white employee who was not subjected to such conduct. The dean had demonstrated a racially charged hostility and/or animus towards Plaintiff's tone and style of communication. This issue of her communication style or tone was reiterated in

an email by the Dean to Plaintiff. Plaintiff's accent, linguistic, and/or manner of communication arising out of her being born and raised in Africa was subsumed in the context of the Dean's racially charged conduct and/or animus.

33. Dean Denton demonstrated a discriminatory and racial animus by his failure to recognize Plaintiff's ability to teach criminal justice despite hiring a white male having no criminal justice degree to chair the criminal justice department. This discriminatory conduct and disparate treatment continue to the present with Defendant scrutinizing and qualifying Plaintiff's qualifications to teach the classes that Plaintiff has successfully taught for over 18 years with Defendant. Plaintiff has a Ph.D. in Public Administration and Policy which is considered a related field to criminal justice as psychology is considered a related field to criminal justice. However, Defendant has does not scrutinize the ability of Dr. Culhane with his psychology educational background in teaching and chairing the department of Criminal Justice.

34. Plaintiff seeks the objective review based on departmental standards and criteria that was denied her for the 2019/2020 academic year by Gonga and for the court to remedy the discriminatory conduct that occurred when Plaintiff was denied opportunity to self-select her department after the departmental split. This failure constitutes discriminatory conduct and retaliation.

35. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her race. Such discrimination practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

36. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, as amended, makes it an unlawful employment practice for an employer to discharge or discipline an employee

because of her/his race, color, religion, sex, or national origin. It is also an unlawful employment practice, under § 704(a) of Title VII, for an employer to discharge or discipline an employee because (s)he has filed a Title VII charge, has participated in a Title VII investigation, or has otherwise opposed Title VII discrimination. (See § 614.) The factual allegations averred herein constitute retaliation for Plaintiff's opposing discriminatory acts in the workplace and reporting the same to management or university department. This tangible employment action constitutes retaliation as defined in Title VII for Plaintiff reporting the offending behavior averred herein. Plaintiff was subjected to hostile acts, attitudes, and such other conduct by employees and/or managers for opposing and/or reporting discriminatory conduct prohibited by § 704(a) of Title VII.

37. Defendant(s) are strictly liable for the acts averred herein because managers and/or department heads/deans referenced herein had authority to materially alter the terms and conditions of employment for professors as employees under their supervision. Defendant failed to exercise reasonable care to prevent and correct promptly any harassing, and/or offending behavior. The frequency of the discriminatory conduct, its severity, and pervasiveness threatening and humiliating to Plaintiff unreasonably interfered with Plaintiff's work performance and adversely affected her emotional and/or psychological well-being. Such facts consituute a "hostile and/or "abusive" work environment. See Meritor *Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49

38. Plaintiff has suffered damages as a result of Defendant discriminatory and/or retaliatory actions in excess of $75,000.00.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. Declaration that the Defendant violated Plaintiff's rights with regard to race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. and/or including retaliation.

2. Injunctive relief ordering Defendant to cease all discriminatory and/or retaliatory conduct alleged herein and/or exercise such remedial measures to correct the adverse effects arising out of such conduct.

3. Compensatory damages with prejudgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendant's unlawful actions in an amount not less than $500,000.00 or to be determined;

4. Damages to Plaintiff for emotional distress, loss of enjoyment of life, embarrassment, and humiliation in an amount to be determined;

5. Punitive damages to Plaintiff in an amount to be determined;

6. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses; and

7. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/Roland Mumford

Roland Mumford BPR 026495
Law Offices of Roland Mumford & Assoc.
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net
Attorney for Plaintiff