EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 494-2019-02950 |

Tennessee Human Rights Commission and EEOC
*State or local Agency, if any*

**Name** (indicate Mr., Ms., Mrs.): Dr. Chineyere O. Mcgruder — Dr. Chinyere O. Mcgruder

**Home Phone** (Incl. Area Code): 

**Date of Birth**: 

**Street Address**: 5330 Smiley Hollow Rd, Goodlettsville, TN 37072

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

**Name**: AUSTIN PEAY STATE UNIVERSITY
**No. Employees, Members**: Unknown
**Phone No.**: 

**Street Address**: 601 College Street, Clarksville, TN 37044

**DISCRIMINATION BASED ON** (Check appropriate box(es).):
☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 08-26-2019   Latest: 06-09-2020
☒ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):
See attached.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 29th Sept 2020
Charging Party Signature: Chinyere O. Mcgruder

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

## Personal Statement of Dr. Chinyere O. McGruder

**My name is Chinyere O. McGruder. I have been a faculty member and tenured Professor at Austin Peay University for over 16 years. Below is my personal statement outlining the time frame of racial and sex discrimination I have experienced while a faculty member with the University.**

- In spring 2017, an academic re-organization proposal was made and approved to 1) dissolve the former department of public management and Criminal Justice, 2) create a freestanding department of Criminal Justice, and 3) merge the discipline of public management with the department of political science to create a department of political science and public management.
- When the department was split early 2017, faculty were given the opportunity to choose verbally via the chair of the department if they wanted to stay within the department of CJ or within the Pols Sci /Public management department. In addition, because I asked during the meeting, the then Dean Denton said that faculty could also ask for joint appointment via letting the chair know. So, choosing a department was a separate issue from joint appointment. We were told we could choose our department and if we were inclined, to also ask for joint appointment. There was no conflation of the 2 separate issues.
- I was deprived by Dr. Denton of the opportunity (that was provided to other faculty members) to choose the department I wanted to stay in pursuant to the departmental split.
- Accordingly, Dr. Denton stated, "**We reviewed her transcript and her vita and discussed her past teaching in both areas. We concluded that she did not have any academic credentials in the field of Criminal Justice or sufficient scholarly activity in the field of Criminal Justice to merit a joint appointment in both the department of Criminal Justice and the department of political science and public management. In addition, <u>we concluded that her appropriate academic home was the department of political science and public management.</u> (Had her background been more appropriate to a sole appointment in Criminal Justice, we would have voiced that opinion.)** "
- What Dr. Denton ( A Male), was saying, was that I did not have the credentials to choose to be in Criminal Justice despite the fact that Dr. Hashmi ( A male Professor), with a History background, was then allowed to stay in Criminal Justice and Dr. Culhane ( A Male Professor), with a Psychology background, was deemed qualified to teach as well as chair criminal justice. Dr. Denton mentioned that Dr. Culhane believed I should also be in Political Science/Public Management, based on my qualifications, when Dr Culhane told me on 2 separate occasions that I was more than qualified to teach Criminal Justice especially given my research endeavors in Criminal Justice, just like he was qualified to teach in Criminal Justice given his research areas in those fields and despite his degrees in Psychology. Dr. Denton and his protegee Dr. Culhane, then made the biased decision to take away my choice to decide the department I wanted to be in, even after declining the joint appointment. Joint appointment is separate, and distinct from the opportunity other faculty had to choose their department.

- Accordingly, Dr. Culhane in fall of 2017, told me that I could teach 2 years for Criminal Justice while I figured out my options. That meant that I was joint teaching in both the department of Criminal Justice and the newly combined department of Pol Science and Public management. I verbally accepted that option. So, for him, Dr. Culhane, (according to Dr. Denton) to seemingly tell or agree with Dr. Denton that I am qualified only for Pols /Sci /PM can be seen as biased and discriminatory since the same criteria does not apply to him or others in the department with disparate backgrounds that choose and were allowed to teach within Criminal Justice.
- This is part of the email that Dr. Denton sent me when I requested Joint appointment
- **"If I am not mistaken, you hold a Ph.D. in public administration. If I am correct, this clearly qualifies you to serve as a tenured faculty member in the department of political science and public management. I do not know what sort of academic preparation you might have in the field of Criminal Justice. It is not uncommon to expect that someone has completed at least 18 hours of graduate course work in a field in which they wish to teach. Though I have not spoken with the Provost about this, 18 hours of graduate course work in another field might be a reasonable threshold of academic preparation to begin a discussion about a joint appointment. Absent that level of graduate preparation in Criminal Justice, the focus would shift to whether you have sufficient academic preparation or practice/research experience to teach particular courses that might overlap between the fields of public management and Criminal Justice, but happen to carry a CRJ prefix. "**
- Please any finder of facts should peruse the above statement very well and tell me how after that above statement, he concluded that I am not qualified. Dr. Culhane does not have 18 hours of graduate work in Criminal Justice, he had graduate work in what could be considered a related field, psychology, just like I had graduate work in Public management and Policy which could also be considered a related field.
- I have over 16 years at Austin Peay State University and over 4000 hours of teaching, developing Criminal Justice classes, being the main campus Criminal Justice faculty as well as growing the CJ department on main campus for 15 years, as well as reviewing various Criminal Justice books and other related Criminal Justice endeavors. Yet in spite of that Dr. Denton decided to deny me the choice to move to Criminal Justice.
- In 2017 I filed A Complaint with Sheila Bryant, the Director of Equal Opportunity, and Affirmative Action at Austin Peay.
- Instead of Ms. Bryant, acting on behalf of the administration, to make the effort to investigate and send me the report expeditiously, she consistently dragged it on for over a year. It will be 2 years fall of 2019, since I filed the complaint. That does not show a good effort on the part of the university in handling complaints about discrimination. This, even though I kept asking her various times for updates. I am quite positive that there is no university policy that states that complaints should take more than a year to be addressed by the Affirmative action person. Such, obfuscation, does not help in fostering confidence within the university system of resolving racial discrimination. In lieu of writing the report within the time frame that Ms. Bryant had assured me it would be written, I had to wait till the summer of 2019 (after my last email to her) to respond. Her prolonged inaction led me to explore other options for addressing my complaint.
- I waited for the report of the investigation from Ms. Bryant despite the fact that some majority faculty members (within both Criminal Justice and Pm/Political Science) have

- told me that what was done to me was wrong and grandfathered faculty should not have a review of their credentials again to decide if to stay in a department or not, and that I should just march on over to Dr. Culhane and tell him that I am in the department of Criminal Justice.
- While still waiting for a response to my complaint. I was also been summarily notified the summer of 2019 that since I was not in Criminal Justice, I will have to move out of my office in Clement RM 114. After I was denied the opportunity to choose my department in 2017, because of my ethnicity and gender by Dr. Denton, the department of Criminal Justice effectively became a male only tenured and tenure track faculty department up until the last time the university was in session which was spring of 2019. As of Spring of 2019, the department was hiring new professors since they had a dearth of professors, but Dr. Denton did not want to honor my choice in deciding if to stay in the Criminal Justice department or not. Another male majority professor in Pol sci/PM will be joining the Criminal Justice department, after initially choosing to be in Pols Sc/PM the professor decided spring 2019 that he wanted to move to Criminal Justice and he did starting fall of 2019, meanwhile I never even got the opportunity to choose my department initially when everybody else did, talk less of having the privilege to change my mind about my decision.
- My Complaint was finally answered on or about May 23, 2019. In which Ms. Bryant found that I was not discriminated against, despite the fact that she acknowledged within that response that the treatment I had received from Dr. Denton was wrong.
- I filed an appeal in August of 2019, exhausting all efforts provided by the University first. My appeal was denied immediately with extraordinarily little explanation given, by the President of Austin Peay State University.
- So as it stood Austin Peay State University Criminal Justice department under the then auspices of Dr. Denton, and Dr. Culhane seemed to be comfortable denying me (the lone African origin and only woman), the opportunity to choose if to teach in Criminal Justice, with the end result that as of spring 2019, Austin Peay State University's Criminal Justice department under the current chair Dr. Culhane consists of tenured and tenure track faculty of only majority males. Note: The department made 2 new hires of majority women in Summer of 2019. Accordingly, the department of Criminal Justice as of Summer 2020 is still mono ethnically Caucasian.
- I worked hard to grow the Criminal Justice Department on main campus. It is hiring more professors, under Dr. Culhane, after Dr. Denton kicked me out of the department by denying my choice. Not only has this been psychologically stressful and impactful on me but it had also affected me financially summer 2019 when Dr. Culhane did not allow me to teach Criminal Justice summer classes. So, for summer 2019, the first time in over 10 years I did not earn summer salary. Criminal Justice has more enrolment than Pols Sci/PM.
- Another tenured Professor just recently transferred to Criminal Justice for fall of 2019 from Pols Sci /PM.
- I have been trying to go through the administration in resolving this specific 2017 discriminatory action by Dr. Denton but that was compounded by Ms. Bryant's inability to send the report of her investigation to me in a timely manner despite my protestations. Below are the facts of the case, for any fact finder to reach a decision as to the discriminatory nature of not only Dr. Dentons's actions, but also the discriminatory,

- retaliatory and hostile environment I am continually being subjected to by the university, and Dr. Brown (the new dean).
- In the summer of 2019, I was notified that since I was not in Criminal Justice, I would have to move out of my office in Clement RM 114 and I was not allowed to teach Criminal Justice summer classes., despite the fact that my oral agreement with Dr. Culhane, Fall 2017, as mentioned prior, was that I would joint teach for CJ department for 2 years. So, for summer 2019, this was the first time in over 10 years I did not earn summer salary adding my financial hardship.
- On March 18, 2020 I was supposed to have a faculty evaluation but the chair postponed it (she said if I send the documents that the email records show that I had sent them to her) she would reschedule for us to have an evaluation) because she said I did not send her my self-evaluation nor had she seen my CV ( which is nonfactual, the email documentations show otherwise). The chair refused to answer my emails to reschedule and filled out an evaluation without my input pursuant to the university policies on faculty evaluations
- I appealed to the dean, on or before the 7th of April who ignored me till I went to human resources on May 18, after the deadline for dean response to a faculty evaluation appeal. Accordingly, he then scheduled a zoom meeting, and in the meeting he and I did the majority of the talking and, basically he said my work was not exemplary, and the chairs opinion should determine the faculty evaluations, despite his past statements to the contrary, the prior year. I tried to explain to him that I had a real evaluation in 2019 which was exemplary and which the then chair commended my efforts and encouraged me to continue with my research efforts and book reviews. etc. He said the new chair's opinion is what mattered. I asked how that could be the case since I was going by the standards that I had discussed with the prior chair and the departmental standards. If the chair opinion is the main crucible of the evaluation in lieu of documented academic research efforts, teaching and advisement, then one might not bother doing research anymore but to try to ingratiate themselves to the chair., to get a good evaluation. He said at this point it is the chair's opinions that matter and that he would encourage the chair to have written standards. Nonetheless the fact remains that I did not have an evaluation since the chair failed to reschedule like she had indicated when she said that I did not send her the self-evaluation materials despite the fact that email records show that I did.
- I am supposed to teach 4 classes for fall 2020 , but the chair said that the dean asked her to take away one of the classes that I am supposed to teach for fall 2020 and give it to an adjunct. When I asked her why she said it is because the Dean told her I will be teaching a CJ class for fall 2020. When I told her that if that were the case it was strange that the chair of CJ had not contacted me as is the norm to ask me for the class, I would teach for CJ in fall 2020. She said she would check again with the dean and get back with me. That was in Feb 2020. She never got back with me. I asked her at the faculty April 2020 zoom meeting if the dean had updated her about my 4th class for fall, and she said no he had not said anything to her.
- So currently we are in June of 2020 and I do not have the 4th class that I had chosen and was given to teach for fall 2020, because the dean had removed me from being the faculty for the class and given it to an adjunct. So currently for fall 2020, I have only 3 classes instead of 4 classes for fall 2020.

- This is discriminatory and retaliatory treatment, and creates a difficult working environment, especially since I am the only faculty, that had their class taken away from them without explanation or update. It also make it difficult for me to prepare my fall classes in summer as faculty is usually encouraged to.

- My appeal was denied by the University interim Provost Dr. Meisch on June 9, 2020.

- In my opinion one of the most demoralizing, discriminatory and retaliatory actions of Dean Brown, in conjunction with Dr. Culhane, was with regards to the $50,000 call for proposals with regards to a Feasibility Study of building a Juvenile Justice Detention Center in Montgomery County. Prior to that call for proposal, I had the commissioner come speak to one of my Criminal Justices classes in 2019. So, when the city was thinking about proposals, she thought of my past work on CR issues especially pertaining to racial issues within the criminal justice system. So, she thought I was still within the department of Criminal Justice. Accordingly, she sent the call for proposal to CJ Chair and specifically told Dr. Culhane that she wanted me to be a part of the proposal since she was familiar with my work. Dr. Culhane whom she had specifically informed that she wanted me to be part of the proposal had not said anything to me about it nor Dr. Brown.

  Dr. Brown had emailed CoBHS about the proposal, so I had replied to his email and copied my then chair. Dr. Brown replied and said I should check with Dr. Culhane since he was the point person. So, I replied to Dr. Brown and also Dr. Culhane and my then chair. And I eventually said I would wait to hear back from them, since Dr. Brown said they had to determine if there was sufficient interest in a team to work on the proposal. Apparently, there was interest but Dr. Brown and Dr. Culhane purposefully excluded me from the proposal. They eventually got together a team that did not include a single African American, despite the fact that the proposed center, would house close to a majority of African American youth and despite the fact that the commissioner had indicated that she wanted me to be part of the process. The team that Dr. Brown and Dr. Culhane assembled to work on the proposal included an instructor, but they made sure to exclude me during the process, despite the commissioner continually letting them know that she wanted for me to be part of the process and as an African America would lend a valuable input to the process. They submitted the proposal and they never reached out to me despite the fact that I had specifically emailed Dr. Brown and Dr. Culhane letting both know of my interest and letting them know that I will wait till they send out details about the process. I was excluded from the email details about the process. They sent the proposal to the Commissioner and were supposed to present it Spring 2020.

- All I have repeatedly asked for is to be treated equally and given the same opportunity as the other tenured professors are given; the opportunity to choose my department especially since it seems that Dr. Denton decided not to honor my request for joint appointment, despite the fact that he said it was an option during the 2017 reorganization, and all faculty had to do was to let the then chair know. But when I was the only faculty and a woman of African origin that chose that option, he denied it and subsequently

denied me the opportunity provided the rest of my peers during the 2017 reorganization to decide which department to join.

- I am asking for back pay for the 2019 summer classes I was denied teaching for Criminal Justice in summer per my 2017 agreement with Dr. Culhane that I will temporarily joint teach for CJ for two years. That loss of summer salary was the first time in 10 years that I had not earned summer salary. I will also like attorney fees that I had to pay in order to bring this matter to the university's attention. I will also like punitive damages. This continual discriminatory treatment, retaliatory treatment as well as creation of a hostile environment has been going on since I filed the initial 2017 complaint and it is toxically stressful to me.

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.