IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHINYERE OGBONNA-MCGRUDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AUSTIN PEAY STATE UNIVERSITY ) <br> et al., ) <br> ) <br> Defendants. ) | NO. 3:21-cv-00506 <br> JUDGE RICHARDSON |

# MEMORANDUM OPINION

Pending before the Court is "The Individual Defendants' Motion to Dismiss" (Doc. No. 57, "Motion"), filed by Defendants Tucker Brown and Marsha Lyle-Gonga ("Individual Defendants"), who are employees of co-Defendant Austin Peay State University ("APSU"). In the Motion, the Individual Defendants primarily request pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure the dismissal of all claims asserted against them in Plaintiff's First Amended Complaint (Doc. No. 53), the currently operative complaint in this case.[1] The Individual Defendants filed a brief in support of the Motion (Doc. No. 57-1, "Brief in Support"), and Plaintiff filed a brief in opposition to the motion (Doc. No. 60, "Opposition"), whereafter the Individual Defendants filed a reply in support of the Motion (Doc. No. 62, "Reply").

---

[1] Secondarily, the Individual Defendants request "an award against Plaintiff for attorney's fees and costs related to these individual capacity claims under Tenn. Code Ann. § 29- 20-113." (Doc. No. 57-1 at 1).

## FACTUAL ALLEGATIONS

In their Brief in Support, the Individual Defendants provide a summary of the factual allegations from the First Amended Complaint that are relevant to this instant action as a whole.[2] Comparing that summary to the First Amended Complaint, the Court is satisfied (and Plaintiff does not seem to dispute) that the summary is accurate in both in its overall tenor and in its individual components. Thus, the Court adopts and sets forth that summary below, although the Court has taken the liberty to tweak the summary in particular ways as noted in the accompanying footnote,[3] primarily to clarify what allegations the Court is (and what the Court is not) accepting as true for purposes of the instant 12(b)(6) motion to dismiss.[4]

> Plaintiff has been employed by APSU since 2003. (Doc. No. 53, ¶ 29.)
> Plaintiff was hired as a college professor, to teach classes in criminal justice and

---

[2] That is not to say that everything set forth in such summary is necessarily indispensable or even relevant to the resolution of the instant Motion, but the summary nevertheless is worth setting forth nearly in its entirety.

[3] In this summary, where (alleged) facts are recounted without qualification, they are accepted as true for purposes of the instant motion. Conversely, where the (alleged) facts are qualified in some way (as for example by "Plaintiff claims"), they are not accepted as true for purposes of the present Motion.

In some places, the Court includes ellipses to omit the Brief in Support's language that qualifies the allegations of the First Amended Complaint to suggest that such allegations are not necessarily true, but rather merely alleged by Plaintiff (in the First Amended Complaint). Where the Court does so, its purpose is to make clear that it is unqualifiedly accepting the allegations as true for present purposes. In other places, the Court leaves in the qualifying language used by the Brief in Support, or adds a qualifying term in brackets, believing such qualification appropriate because, under *Iqbal* and *Twombly*, the corresponding allegations are treated not as true but instead as merely alleged by Plaintiff.

[4] For reasons that will be discussed below, the resolution of the instant Motion actually is one that, unlike the resolution of so many Rule 12(b)(6) motions, turns less on what allegations are accepted as true and more on what is being alleged (whether it is accepted as true or not) and what is not being alleged. And yet the Court nevertheless perceives some value in making clear what allegations the Court, applying the below-discussed so-called *Iqbal/Twombly* standard, the Court is accepting as true (because they qualify as alleged *factual matter*) and what allegations the Court is not accepting as true (because they amount to legal conclusions or, even to the extent that they could be characterized as "factual" allegations in some sense, amount solely to mere conclusory allegations rather than allegations of true *factual matter*).

public management. (Id.) In Spring 2017, APSU faculty were advised by former Dean Denton that the-then Public Management/Criminal Justice Department would be split into two departments. (Id. at ¶ 31.) According to Plaintiff, faculty could request joint appointment, based on chair approval, with the two newly created departments – Criminal Justice and Public Management/Political Science. (Id. at ¶ 32.) Faculty from the original Public Management/Criminal Justice Department were told that they could self-select which department they wanted to join. (Id. at ¶ 33.) The self-selection did not include a review of faculty qualifications. (Id.) Dean Denton rejected Plaintiff's request and chair approval for joint appointment and denied her the opportunity to self-select her department. (Id. at ¶ 34.) Dean Denton made the selection for Plaintiff. (Id. at ¶ 36.) Plaintiff claims that, as an African American, she was denied the opportunity to self-select her department. (Id. at ¶ 35.)

Plaintiff filed a formal complaint with APSU's Office of Equal Opportunity and Affirmative Action in 2017, alleging that Dean Denton engaged in race discrimination. (Id. at ¶¶ 37, 40.) APSU responded to the complaint in Summer 2019. (Id. at ¶ 37.) Plaintiff claims that the individual actions of Brown from Summer 2019 through the present, and the individual actions of Lyle-Gonga from 2020, "began to perpetuate a hostile work environment resulting in retaliatory treatment of Plaintiff." (Id. at ¶ 43.) Brown was Dean of the College of Behavioral and Health Sciences at APSU from 2019 through December 2021. (Id. at ¶ 4.) Lyle-Gonga, beginning January 1, 2020, was at all times relevant to the Complaint, Chair of the Department of Political Science and Public Management. (Id. at ¶ 5.)

In September 2019, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (See EEOC Charge No.: 494-2019-02950, Doc. No. 53-1) (Id. at ¶ 41.) Plaintiff's September 2019 EEOC Charge was closed to allow the parties to negotiate but reopened after the parties failed to reach an agreement. (Id. at ¶ 42.) On September 29, 2020, Plaintiff filed another charge of discrimination with the EEOC, which was assigned the same EEOC Charge number as the September 2019 Charge. (Id. at ¶ 9.) Plaintiff claimed that she was discriminated against based on her race and sex in violation of Title VII of the Civil Rights Act of 1964. (See EEOC Charge No.: 494-2019-02950, Doc. No. 53-1.) Plaintiff filed a second charge of discrimination with the EEOC on or about June 17, 2021, alleging retaliation[2]. (See EEOC Charge No.: 494-2021-01993, Doc. No. 53-2.)

As can be gleaned from the Complaint, Plaintiff's claims of race discrimination and the subsequent alleged retaliation and hostile work environment she suffered arise from the 2017 split in departments. (See generally, Doc. No. 53, ¶¶ 19, 31, 35-44.) Specifically, Plaintiff alleges:

> Defendants' discriminatory practices include, but are not limited to: (1) creating or permitting a hostile work environment heavily charged with discrimination; (2) maintaining wages, job

assignments and other conditions of employment that unlawfully operate to deny equal opportunity to Plaintiff because of her race; (3) creating a hostile, racially charged work environment such that no reasonable person would be expected to endure, and (4) retaliating against Plaintiff for opposing discriminatory conduct.

(Id. at ¶ 28.) As to Plaintiff's race discrimination claims, she states, "as a tenured African American was denied the opportunity to self-select her department of out the two newly created departments[.]" (Id. at ¶ 35.) She also claims that "in Spring 2020, [she] was scheduled to teach a particular class in the [F]all 2020 but a white adjunct professor replaced her. (Id. at ¶ 71.) The Complaint further states that in October 2019, "Brown yelled at plaintiff in front of a white faculty member (id. at ¶ 89) and "[s]aid harassment and inappropriate verbal scolding in the presence of a white faculty member was offensive and caused Plaintiff great shame and embarrassment[.]" (Id. at ¶ 90.)

With respect to Plaintiff's hostile work environment allegations, she generally claims that APSU "failed to exercise reasonable care to prevent and correct promptly any harassing, and/or offending behavior. The frequency of the discriminatory conduct, its severity, and pervasiveness are threatening and humiliating to Plaintiff and unreasonably interfered with Plaintiff's work performance. These actions adversely affected her emotional and/or psychological well-being. Such facts constitute a 'hostile and/or abusive' work environment." (Id. at ¶¶ 111-12.) Plaintiff further claims that since she is "an experienced and tenured African American professor, Defendants must find 'cause' to terminate her employment." (Id. at ¶ 24.) And in the absence of allegedly being able to find "cause", [allegedly] "Defendants have intentionally created a hostile work environment in hopes it would cause her to resign[.]" (Id. at ¶¶ 25, 27, 62, 66, 74, 77, 90, 93, 104.)

Specifically, the actions by Dean Brown and/or Department Chair Lyle-Gonga which allegedly perpetuated a hostile work environment include requesting that she move her office (Id. at ¶¶ 45-46), exclusion from a grant proposal (Id. at ¶¶ 47-53), refusing to confer with Plaintiff about the creation of a master's program (Id. at ¶¶ 58-60, 99), refusal to act on Plaintiff's appeal based on the lack of a faculty appraisal (Id. at ¶¶ 61-63), denigrating Plaintiff's teaching and research done with minority students (Id. at ¶¶ 64-68), failure to timely receive clarification about a replacement class she would be teaching (Id. at ¶¶ 71-77), denied the ability to teach summer classes (Id. at ¶ 88), harassment and verbal scolding in the presence of a white faculty member (Id. at ¶¶ 89-90), failure to recognize Plaintiff's accomplishments in the conduct of her annual evaluations, and evaluations and appeals generally (Id. at ¶¶ 55, 78-80, 91-95), not assigning courses Plaintiff selected to teach (Id. at ¶¶ 81-87, 96-98), and criticism of her speech accent and thereby her natural origin (Id. at ¶ 109).

Lastly, Plaintiff claims that, since the filing of her complaint with APSU in 2017, she has experienced retaliation by Defendants. (Id. at ¶ 23.) Plaintiff then states that by and through the actions of the Department Chair and Dean, APSU has engaged in retaliatory treatment of Plaintiff from Summer of 2019³ through the present. (Id. at ¶ 43.) Such [allegedly] retaliatory conduct . . . includes the following:

• In September 2019, Plaintiff was instructed by Brown to move from her office to a basement office as a form of retaliation after reporting and opposing previous racially charged discriminatory conduct. This was the second attempt in 2019 to transfer her to a basement office. (Id. at ¶¶ 45-46) (emphasis added) (hereinafter "the request to change offices".)

• In October 2019, Plaintiff requested that she be included in a grant proposal for a new juvenile detention center in Tennessee. Plaintiff claims she was purposefully excluded from participation as evidenced in the final brochure. (Id. at ¶¶ 47-54) (hereinafter "the grant proposal".)

• In March 2020, Plaintiff did not receive an annual evaluation per university policy for her performance in the 2019-2020 academic year under the pretext of Plaintiff not submitting all of the necessary documents. (Id. at ¶¶ 55-57) (hereinafter "the 2019-2020 evaluation".)

• In January 2020, the professors within the political science and public management department voted unanimously for Plaintiff to move into phase two of the creation of the master's program. Plaintiff had previously submitted the initial phase one request on "curriculog" and it was approved. Brown and Department Chair [Lyle-] Gonga have deliberately refused to confer with Plaintiff about this matter. (Id. at ¶¶ 58-60) (hereinafter "the master's program".)

• In February 2022, Plaintiff was not assigned the courses that she requested to teach. Plaintiff was advised that she was not qualified to teach classes she had previously taught for some 18 years. (Id. at ¶¶ 96-98) (hereinafter "course choices".)

(Doc. No. 57-1 at 2-6).

Based on these allegations, Plaintiff (without clearly breaking out her claims into separate counts) asserts that Defendant Austin Peay has violated particular provisions of Title VII of the Civil Rights Act of 1964 as amended. (Doc. No. 53 at ¶ 26). She also asserts that the Individual

Defendants have violated 42 U.S.C. § 1983,[5] and are liable to Plaintiff for damages as result,[6] in that they allegedly "have unlawfully retaliated against Plaintiff via a hostile work environment based on race in hopes this tenured African American professor would resign." (*Id.* at ¶ 27). *See also id.* at ¶¶ 107, 113. Plaintiff does not assert that the Individual Plaintiffs are liable to her under Title VII. [7]

## LEGAL STANDARDS

The instant Motion is brought under Rule 12(b)(6), and this is appropriate because the motion asserts that Plaintiff has failed to state a claim against the Individual Defendants upon which relief can be granted. The Court thus will state below the legal principles generally applicable to a Rule 12(b)(6), before noting (in the following section hereof) that many of these principles are not implicated with respect to the *first* of the below-stated two issues the Court must decide.

---

[5] "To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v Shelby County Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000). If a plaintiff can demonstrate these things, generally the liability thus established would extend at least to any defendant who is such a "person." Plaintiff here contends that each of the Individual Defendants is such a person.

[6] In her prayer for relief, Plaintiff seeks, among other things, damages against the Individual Defendants for emotional distress, loss of enjoyment of life, embarrassment, and humiliation, as well as punitive damages against the Individual Defendants. (Doc. No. 53 at 16).

[7] Any such assertion would have failed in any event. *Alexander v. Univ. of Memphis*, No. 20-5426, 2021 WL 2579973, at *3 (6th Cir. June 7, 2021) ("The district court correctly dismissed Alexander's race-discrimination and retaliation claims against Rudd for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), because 'an individual cannot be held personally liable for violations of Title VII.'" (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012))). Indeed, Plaintiff correct acknowledges that this is the law. (Doc. No. 60 at 8 ("Title VII contains no provision for actions against individual actors and therefore employee victims no provision to sue those tortfeasors.")).

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not,

the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## THE INDIVIDUAL DEFENDANTS' PRIMARY ARGUMENT

The Individual Defendants primarily seek to meet their burden by explaining that the very nature of the claim asserted against them is such that the claim is not one upon which relief can be granted. In other words, the Individual Defendants argue primarily that the claim Plaintiff asserts against them is one that as a matter of law cannot validly be asserted against them.

More specifically, the Individual Defendants first assert that "an employee may sue a public employer under both Title VII and § 1983 only when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution." (Doc. No. 57-1 at 8). To support this assertion, they cite *Grano v. Dep't of Dev., City of Columbus*, 637 F.2d 1073 (6th Cir. 1980), and *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) ("It would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can by-pass all of the administrative processes of Title VII and go directly into court under § 1983.").

They next assert, relatedly, that "Title VII provides the exclusive remedy when a Section 1983 cause of action is *based on violations of* Title VII." (Doc. No. 57-1, at 7) (emphasis added).[8] Not surprisingly, the Individual Defendants then assert that Plaintiff's claims against them are based only on violations of Title VII. They argue that "[t]he Complaint does not once suggest, let alone allege a violation of a right protected by the Constitution [but rather] "[a]t best . . . paints a picture of the alleged discrimination [Plaintiff] suffered, in violation of Title VII." (Doc. No. 57-1 at 8). Ergo, the Individual Defendants argue, Plaintiffs claims are cognizable only under Title VII, meaning that Plaintiff has not stated a valid claim against them under Section 1983. (*Id.* at 9).

PLAINTIFF'S RESPONSE

In response, Plaintiff cites *Grano v. Department of Development City of Columbus*, 637 F.2d 1073 (6th Cir. 1980). There the Sixth Circuit noted that "[a] plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under §1983. If there is liability under Title VII, there should be liability under § 1983." *Id.* at 1082.

Plaintiff next attacks the Individual Defendants' reliance on *Delaney (Potter)*, on the grounds that it cites a case *Ethnic Employees of Library of Congress v. Boorstin* ["*EELC*"], 751 F.2d 1415 (D.C. Cir. 1985), which (according to Plaintiff) actually helps Plaintiff. In particular, Plaintiff notes that EELC stated that "[n]othing in that history even remotely suggests that

---

[8] The undersigned is chagrined that the Individual Defendants state that "'Title VII is the preemptive and exclusive remedy for federal employment discrimination falling under Title VII.'" (Id. at 8 (quoting *Delaney v. Potter*, No. 3:06-0065, 2006 WL 2469380, *4 (M.D. Tenn. Aug. 24, 2006) (citing *Brown v. Gen. Serv. Admin.*, 425 U.S. 820 (1976))) (emphasis added). In making this statement, the Individual Defendants unmistakably suggest that the statement has application to the present case. But it absolutely does not. The reference there to "federal employment discrimination" is a reference to *discrimination in federal employment* (which is precisely what was at issue in both *Delaney* and *Brown*), not to *discrimination in violation of federal law*. This is readily apparent from these cases. Counsel is cautioned about making case citations that carry an incorrect implication that they are applicable to the case at hand. The Court expresses these concerns even though it realizes that *Delaney* claimed that the rationale of *Brown* had been applied to—in addition to various cases involving discrimination in federal employment—one case that did not involve discrimination in federal employment (*Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 378 (1979)). *See Delaney*, 2006 WL 2469380, *4.

Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all." *EELC* at 1415. Plaintiff implies that under *EELC*, she should be able to sue the Individual Defendants under Section 1983 for constitutional violations because "Title VII contains no provision for actions against individual actors and therefore employee victims no provision to sue those tortfeasors." (Doc. No. 60 at 8). *Accord*, *id.* at 9 ("[S]ince Title VII provides no remedy to the victim for relief from the discriminatory actions of individuals that have subjected her to conditions, that have altered the terms, conditions, and privileges of her employment, 'Congress did not intend for Title VII to displace claims she may have against individual defendants.'" (quoting *EELC*, 751 F.2d at 1415)).[9]

Plaintiff next attacks the Individual Defendants' reliance on *Day*. She notes that *Day* states, *inter alia*, that "'[w]here an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII.'" (*Id.* at 8-9 (quoting *Day*, 749 F.2d at 1205)).[10]

Plaintiff next cites *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 75 (2d Cir. 2015), in further support of her above-referenced assertion to the effect that "a complaint that alleged discrimination is actionable under § 1983" against individual defendants. (*Id.* at 9-10 (quoting *Vega*, 801 F.2d at 75)). Plaintiff then recites at length allegations of the complaint indicating that the Individual Defendants "perpetrated a hostile work environment, then used it to

---

[9] The Court is compelled to opine that counsel for Plaintiffs need to do a better job in terms of formatting case citations.

[10] Relatedly, the Court is compelled to note that here, Plaintiff strangely makes a sort of citation to *Grano* that suggests incorrectly that the quotation here is to *Grano* rather than *Day*.

retaliate against Plaintiff [, which] makes them liable to Plaintiff. (*Id.* at 10-12). She concludes that such allegations are sufficient to plausibly suggest a right to relief under Section 1983.

ANALYSIS

The instant question is whether Plaintiff's Section 1983 claims against the Individual Defendants are barred on the grounds that the claims are based on violations of Title VII. This question can be subdivided into two questions: (a) is a Section 1983 claim against an individual defendant necessarily barred[11] on the grounds that it alleges discrimination based on violations of Title VII?; and if so (b) does that mean *Plaintiff's* Section 1983 claims against the Individual Defendants are barred? The Court takes up each of these questions in turn.

Relying on out-of-circuit cases mentioned above, Plaintiff essentially asserts that the answer to the first question is no. That is, she cites *EELC* and *Vega* for the proposition that a Section 1983 claim is never precluded based on the possibility of relief under Title VII—precisely because there is no right to relief against individual defendants under Title VII. The Court does not begrudge Plaintiff for such reliance, but ultimately it gets her nowhere because binding Sixth Circuit authority precludes her assertion. "[W]e have held that plaintiffs cannot use § 1983 to enforce purely statutory claims under Title VII . . . ." *Bullington v. Bedford Cty., Tennessee*, 905 F.3d 467, 471 (6th Cir. 2018) (*quoting Day*, 749 F.2d at 1204 ("Though the issue is not without doubt, we believe Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII.")).[12] It is clear that *Bullington* serves as a clear endorsement

---

[11] The Individual Defendants use the term "preempted." The Court, not convinced that a Title VII-based bar to Section 1983 claims is due to what technically fits the definition of "preemption," uses the more general term "barred."

[12] Plaintiff's reliance on *Grano* is to no avail. In relevant part, Grano stated as follows:

of the continuing and uncontroversial viability of *Day*, especially given *Bullington*'s quotation of the Third Circuit's relatively recent observation that "every circuit to consider this exact question has held that, while a plaintiff may use § 1983 as a vehicle for vindicating rights independently conferred by the Constitution, Title VII and ADA statutory rights cannot be vindicated through § 1983." *Id.* (quoting *Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017) (internal quotation marks omitted)).[13]

Surprisingly, the Individual Defendants do not cite *Day* on this point, and they do not cite *Bullington* at all. But having found this authority on its own, the Court is constrained to find that it is the law of the Sixth Circuit and thus to follow it as binding precedent. This means that if Plaintiff is attempting to (as *Bullington* puts it) "use § 1983 to enforce purely statutory claims

---

> The problem is that the district court made contradictory findings. It found that the defendants violated Title VII, but then found that the defendants had not intentionally discriminated against the plaintiff. A plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under s 1983. If there is liability under Title VII, there should be liability under s 1983. Similarly, if there was no discriminatory intent, there cannot be liability under either Title VII, on a disparate treatment theory, or s 1983.

*Grano*, 637 F.2d 1073 1081–82. But there is no indication in *Grano* that either the district court or the Sixth Circuit even considered the possibility that at least in some circumstances, a Section 1983 claim could not proceed together with a claim under Title VII. Instead, the two courts apparently assumed that the two kinds of claims could proceed together; perhaps this was because the plaintiff in *Grano* (unlike Plaintiff in the present case) apparently alleged violations not only of Title VII but also of the Fourteenth Amendment—a circumstance that, as discussed below, can make all the difference in whether *both* kinds of claims are cognizable in a particular case. In *Grano*, the Sixth Circuit (operating under this assumption) merely noted that if there was liability under Title VII, then there should be liability under Section 1983. *Day*, decided after *Grano*, addressed the issue that *Grano* did not: whether a plaintiff can use § 1983 to enforce *purely statutory claims* under Title VII. So the Court here follows the on-point, and more recent, pronouncements from *Day* and *Bullington* rather than *Grano*.

[13] The fact that the Individual Defendants cannot be held liable under Title VII does not change this reality. *Bullington* was decided in the context of claims against individual defendants who likewise could not be held liable under Title VII; *Day* was not, but it does not suggest that the difference in context would mandate a different rule. Moreover, the statement from *Williams* prominently quoted in *Bullington* was made specifically in the context of claims against individual defendants. *See Williams,* 870 F.3d at 297.

under Title VII"—or (as *Day* puts it) assert a "§ 1983 cause of action [that] is based on a violation of Title VII"—the attempt fails.

The question, then, becomes whether this is actually what Plaintiff is attempting to do. Detrimental though it was to Plaintiff on the first issue, *Bullington* throws Plaintiff a lifeline on the second issue. As background, the Court notes that in *Bullington*, the plaintiff brought claims under the Americans with Disabilities Act ("ADA"), rather than claims under Title VII. The plaintiff also brought claims under Section 1983, which the defendants claimed (via a motion to dismiss) were barred because they were based on violations of the ADA. After noting (as the Court has discussed above) that *Day* holds that Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of *Title VII*, and that other circuits likewise have held that *ADA* rights cannot be vindicated through Section 1983, the court in *Bullington* turned to the latter issue, *i.e.*, whether "plaintiffs can use § 1983 to enforce the ADA," an issue the Sixth Circuit had "not previously decided." *Id.* at 471. The court found that it could avoid that issue altogether because plaintiff actually was not seeking to use Section 1983 to enforce the *ADA*; rather, she was seeking to use Section 1983 to enforce *constitutional rights:*

> Nevertheless, we do not need to reach a conclusion on this issue because Bullington's § 1983 claims allege *constitutional* violations, not violations of the ADA itself. Bullington pleaded "that Defendant Cooper violated her *federal constitutional rights secured by the 14th amendment* to be free from discrimination and retaliation as a result of her illness/disability." R. 28 (Second Am. Compl. ¶ 14) (Page ID #90) (emphasis added). She has also alleged "that Bedford County is liable for the violation of [Bullington's] *federal constitutional rights* pursuant to 42 U.S.C. § 1983 in failing to provide proper supervision and training to prevent this type of unlawful, discriminatory abuse." *Id.* ¶ 15 (Page ID **\*472** #90) (emphasis added). Thus, Bullington's § 1983 disability discrimination claims are being brought pursuant to the Fourteenth Amendment's Equal Protection Clause, not the ADA. Therefore, the real issue is whether Bullington can pursue her separate but parallel Fourteenth Amendment claims for disability discrimination.

> Several circuits, including our own, have allowed constitutional claims to be brought under § 1983, even where the plaintiff's constitutional claims run parallel to claims brought under analogous statutes.

*Id.* at 471-72 (brackets in original). The Court went on to hold in essence that constitutional claims could be brought under Section 1983 irrespective of whether they ran parallel to a claim brought under the ADA. *Id.* at 472-476. In short, *Bullington* indicates that a plaintiff properly may bring a Section 1983 claim in addition to an ADA claim, even if both claims are based on the same underlying allegations of discrimination, provided that the plaintiff alleges a violation of federal constitutional rights that is separate from the alleged violations of the plaintiff's statutory rights under the ADA. What's more, *Bullington* indicates that a plaintiff in this situation does not have to do very much to adequately allege a violation of her federal constitutional rights; it suffices merely to incant something to the effect that the defendants have violated her "federal constitutional rights secured by the 14th amendment to be free from discrimination and retaliation as a result of her [protected class]."[14]

This is not a high bar to clear for a plaintiff seeking to bring claims against state actors under both Section 1983 and the ADA. And the Court has little trouble concluding that this low bar likewise exists in the case of federal anti-discrimination laws other than the ADA, including Title VII.

---

[14] As discussed further below, Section 1983 allows for claims based on a violation of federal *law*—as distinguished from a violation of the (federal) *Constitution*. So a Section 1983 claim could be brought, together with a Title VII claim, based on an alleged violation of a federal law other than Title VII, even absent any alleged violation of the Constitution. *See*, e.g., *Day*, 749 F.2d at 1205 ( "Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution *or a federal statute*—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII." (emphasis added)). But as noted below, here Plaintiff does not base her Section 1983 claim on an alleged violation of federal law other than Title VII, just as she does not bring her Section 1983 claim based on an alleged violation of the Constitution.

And yet, low though the bar may be, Plaintiff here nevertheless fails to clear it. In the First Amended Complaint (and, for that matter, the original complaint), Plaintiff makes absolutely no reference to any constitutional violation, or for that matter any violation of federal law other than Title VII. Instead, Plaintiff essentially notes (by quoting Section 1983 in full) that a Section 1983 claim can be premised upon a violations of federal *laws* and not just the Constitution, and then alleges only a violation of federal laws:

> 42 U.S.C. § 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law suit in equity, or other proper proceeding for redress." Plaintiff asserts that Defendants Brown and Gonga as illustrated in the foregoing have engaged in conspiratorial behavior that has caused her to be deprived of rights to which she is entitled under *laws of the United States*, including but not limited to retaliation for having reported the violations of her rights.

(Doc. No. 53 at ¶ 107). The only "laws" to which Plaintiff refers in the entire First Amended Complaint is Title VII. Section 1983 refers to the Constitution as something separate from federal "laws," but even if the Constitution could potentially be considered part of the "laws" that Plaintiff refers to here, the First Amended Complaint—outside of the quotation of Section 1983 in paragraph 107 noted above—does not refer at all to the Constitution, let alone to any particular provision of it (such as the Fourteenth Amendment). Thus, Plaintiff has not made even the minimal allegations that would have been sufficient for her to state a claim under Section 1983 that is cognizable separately from a claim under Title VII. In short, the Amended Complaint alleges discrimination in violation of Title VII, and *only* Title VII—and not any other provision of federal law or of the Constitution. And Plaintiff "cannot use § 1983 to enforce purely statutory claims under Title VII . . . ." *Bullington v. Bedford Cty., Tennessee*, 905 F.3d 467, 471 (6th Cir. 2018)

(*quoting Day*, 749 F.2d at 1204). Thus, her Section 1983 claims against the Individual Defendants is barred.[15]

## CONCLUSION

Plaintiff's only claims against the Individual Defendants—Section 1983 claims—are barred because they are based solely on violations of Title VII. Accordingly, those claims must be dismissed, with prejudice.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[15] Given the Court's disposition herein, the Court need not address whether the claims against the Individual defendants should be dismissed based on limitations or qualified immunity.